PPG INDUSTRIES, INC., Plaintiff-
Appellant,

v.

CONTINENTAL OIL COMPANY,
Defendant-Appellee.

No. 72–3148.

United States Court of Appeals,
Fifth Circuit.

May 9, 1973.

Rehearing Denied June 7, 1973.

Oliver P. Stockwell, Fred H. Sievert, Jr., Lake Charles, La., Raymond A. Cook, Alfred H. Ebert, Jr., Houston, Tex., David A. Cort, Richard C. Packard, Pittsburgh, Pa., for plaintiff-appellant.

Austin W. Lewis, Gene W. Lafitte, New Orleans, La., John C. Snodgrass, Keith W. Blinn, Harry M. Reasoner, John E. Kennedy, Joseph C. Johnson, Houston, Tex., for defendant-appellee.

Before BELL and THORNBERRY, Circuit Judges, and GROOMS, District Judge.

THORNBERRY, Circuit Judge.

Appellant PPG Industries (PPG) filed this diversity action below in a Louisiana federal court against appellee Continental Oil Company (Conoco) for a declaration of the parties' rights under a gas sale contract and for an injunction to restrain Conoco from performing certain acts which would constitute a breach of the contract or impair Conoco's ability to perform it. On Conoco's motion the district court stayed further proceedings pending final determination of an action for a declaratory judgment previously filed by Conoco against PPG and one other party in a Texas state court which raised the same issues as the federal suit. PPG appeals from the stay order under 28 U.S.C.A. § 1292(b), having obtained the requisite certificate from

the district court and permission from this court to take this interlocutory appeal.[1] We affirm the ruling of the district court.

Under a 1963 contract, last amended in 1969, Conoco agreed to sell to PPG on a continuing basis until 1987 large quantities of natural gas which PPG needed for operation of its large chemical plant at Lake Charles, Louisiana. PPG planned to rely heavily on this gas to support expanded operations at the Lake Charles plant, and it so informed Conoco when the contract was amended in 1969. By 1972, however, Conoco had realized that the contract had become "impossible or commercially impracticable of performance because of the drastic national shortage of natural gas and government regulation,"[2] and it notified PPG that in 1973 or 1974 it would be unable to supply the amounts of gas agreed upon. PPG and Conoco representatives arranged to meet on May 22, 1972 to discuss the contract and to seek solutions to the problem caused by the gas shortage. On May 10, 1972, about two weeks before the meeting, Conoco filed suit in a state district court in Harris County, Texas against PPG and Olin Corporation, another of its major gas customers, for a declaratory judgment that its failure to supply the amounts of gas originally contemplated would not be a breach of its contractual duties. Subse-

quently, Olin Corporation was granted a severance, and Conoco amended its original petition to add other gas customers as declaratory defendants.

Since the filing of the original Texas suit by Conoco, PPG has undertaken several manuevers designated to relocate the litigation on the contractual questions in Louisiana, where it believes the applicable choice-of-law rule[3] and the substantive contracts law[4] are more favorable, and Conoco has battled—successfully so far—to confine the litigation to the Texas forum. PPG has sought three times to remove the Texas suit to a federal court in Texas, which might then transfer the case to a federal court in Louisiana; finding a slightly different set of defendants on each removal attempt due to severances of some defendants and additions of others, the federal district court in Texas each time remanded to the state court, either because the requisite diversity did not exist between Conoco and each of the defendants or because one of the declaratory defendants was a Texas resident. See 28 U.S.C.A. § 1441. PPG also filed suit on May 31, 1972 against Conoco in a Louisiana court in Calcasieu Parish, but that court dismissed the action in deference to the Texas court, which had issued a temporary restraining order prohibiting PPG from proceeding further in the Calcasieu Parish suit.

---

1. Since we conclude 28 U.S.C.A. § 1292 (b) supplies appellate jurisdiction here, we need not consider whether § 1292(a)(1) provides an independent jurisdictional basis. Lear Siegler, Inc. v. Adkins, 9th Cir. 1964, 330 F.2d 595; see also Amdur v. Lizars, 4th Cir. 1967, 372 F.. 1 103, 106.

2. The quoted language is from Conoco's petition for a declaratory judgment filed in the 157th District Court of Harris County, Texas, filed May 10, 1972 and numbered 907308 in that court.

3. While the parties apparently agree that a state or federal court in Louisiana, using the Louisiana choice-of-law rule, would apply Louisiana substantive contract law, it is uncertain whether the

Texas court will apply Texas or Louisiana contract law.

4. The Uniform Commercial Code forms a part of the Texas law of contracts, but Louisiana has not adopted the UCC. Apparently, the UCC provision which PPG hopes to escape by litigating in a Louisiana forum is § 2–615, which provides in part:

Delay in delivery or non-delivery in whole or in part by seller . . . is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency, the non-occurrence of which was a basic assumption on which the contract was made. . . .

The instant action for declaratory and injunctive relief,[5] filed by PPG on June 29, 1972 in the federal district court in Lakes Charles, Louisiana represents PPG's latest tactic to gain access to a Louisiana forum, and the district court's order staying further proceedings pending the outcome of the Texas suit is the barrier which presently blocks this route. Whether the stay order was properly entered depends on the answers to two questions: (1) Whether the district court had discretionary power to stay further proceedings in a diversity suit for declaratory and injunctive relief in deference to a pending state declaratory judgment action, and (2) if so, whether the district court properly exercised its discretion in this case. Upon consideration, we believe both questions must be answered in the affirmative.

### I. Discretionary Power to Stay

Where federal action and a parallel state action involving the same controversy are both proceedings in rem or quasi in rem, so that the granting of effective relief requires possession or control of the res, the court which first assumes jurisdiction acquires exclusive jurisdiction and deprives the other court of power to decide the case. Princess Lida of Thurn and Taxis v. Thompson, 1939, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285. This virtually mechanical in rem rule does not apply to actions in personam, however, such as the instant federal action and the corresponding Texas suit, which do not center about an identifiable res. Where both suits are in personam, as here, each court may proceed to adjudicate the controversy independently despite the pendency of a similar suit in the other court:

> Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res adjudicata by the court in which the action is still pending in the orderly exercise of its jurisdiction, as it would determine any other question of fact or law arising in the progress of the case.

Kline v. Burke Construction Company, 1922, 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226. Thus, the district court below clearly had power to proceed in the instant case. This power is not at issue here. The issue is whether in view of the pendency of a parallel state proceeding, the district court could properly stay its hand when it had power to proceed.

PPG, to support its argument that the stay order was improper, relies principally on Meredith v. City of Winter Haven, 1943, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9. In that case the plaintiffs, invoking the federal court's diversity jurisdiction, sought a declaration that under Florida law the City of Winter Haven could not retire certain bonds without providing for the payment of deferred interest coupons and an injunction restraining the City from doing so, as well as other declaratory and injunctive relief. The Court of Appeals had directed that the action be dismissed and the plaintiffs be left to litigate their claims in state courts because no federal questions were

---

5. In addition to a declaration that Conoco is strictly bound to supply the amounts of gas specified in the contract, PPG sought a permanent injunction restraining Conoco from "(1) Entering into any new gas sale contract that would adversely affect Conoco's ability to perform its contract with PPG; (2) Failing to purchase gas or substituting fuel to satisfy its contractual obligations with PPG, if such purchase is required for Conoco to perform its contract commitment with PPG; (3) Threatening to breach its contract with PPG;" and ordering Conoco "(4) . . . to perform its obligations under the contract to deliver natural gas in the quantities, at the times, and for the prices set forth in said contract as demanded by PPG."

presented and the questions of state law were unsettled. The Supreme Court reversed, holding that difficulty of questions of state law could not alone justify refusal to exercise the diversity jurisdiction conferred on the federal courts by Congress. The Court stressed initially that the prayer for declaratory relief, which accompanied the prayer for injunctive relief, did not stamp the suit with a special overriding declaratory character or eclipse the prayer for an injunction. It noted that a declaration of rights is normally a prerequisite to an award of injunctive relief and concluded that, although the court of appeals had referred to the suit as one for declaratory judgment, it should properly be treated as "ordinary equity suit." 320 U.S. at 231, 64 S.Ct. at 9. The Court then affirmed the mandatory nature of diversity jurisdiction conferred on the federal courts by Congress and made clear that in equity suits only "exceptional circumstances" could justify a discretionary refusal to exercise that jurisdiction:

> The diversity jurisdiction was not conferred for the benefit of the federal courts or to serve their convenience. Its purpose was generally to afford to suitors an opportunity in such cases, at their option, to assert their right in the federal rather than in the state courts. In the absence of some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred, which would in exceptional cases warrant its non-exercise, it has from the first been deemed to be the duty of the federal courts, if their jurisdiction is properly invoked, to decide questions of state law whenever necessary to the rendition of a judgment. . . . When such exceptional circumstances are not present, denial of that opportunity by the federal courts merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court

of the state, would thwart the purpose of the jurisdictional act.

> The exceptions relate to the discretionary powers of courts of equity. An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity.

320 U.S. at 234, 64 S.Ct. at 11. The Court listed several established policies which would warrant the exercise of discretion to withhold equitable relief in some circumstances, including the policies against federal intervention in state criminal prosecutions and federal interference with the collections of state taxes, and the abstention doctrine established in Railroad Commission v. Pullman Company, 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, under which a federal court may require the parties before it to secure in state courts determinations of unsettled state law which may avoid the necessity for constitutional decision. The list did not include the mere pendency of a parallel state action as a circumstance which would warrant the withholding of equitable relief if it were otherwise proper, but in concluding that no circumstances were present in *Meredith* to justify the non-exercise of diversity jurisdiction, the Court did note that no state action was pending in which the questions presented in the federal case could be answered.

PPG's position in this suit is that pendency of a parallel state action is not a special circumstance under *Meredith*, and that the district court in this case should therefore proceed to adjudicate the controversy before it. We do not believe, however, that *Meredith* can fairly be read as forbidding a federal court to stay an equity suit pending the outcome of a parallel state action. In *Meredith* there was no pending parallel state action, and the Court did not directly consider the question of whether such a state action might warrant a federal stay.[6]

6. The lack of a parallel state suit pending at the time the federal action was abated is a factor which also distinguishes County of Allegheny v. Frank Mashu-

Nor did the "special circumstances" list purport to be exhaustive.

Apparently to avoid the force of *Meredith*, Conoco attempts to characterize this case as a declaratory judgment action, in which the injunctive relief sought is only "ancillary" or is "premature," and thus to bring it under the rule of Brillhart v. Excess Insurance Company, 1942, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620, which established the discretionary power of a federal court to abate an action solely for a declaratory judgment in deference to a parallel state action. We cannot agree with Conoco that the instant case falls under the strict holding of *Brillhart*, which dealt with an action seeking only a declaratory judgment. Like the suit reviewed in *Meredith*, this action for declaratory and injunctive relief must be treated as "an ordinary equity suit." To label the claim for an injunction "ancillary" does not advance analysis; PPG expressly requests both remedies in its complaint and the prayer for a declaratory judgment cannot obscure or weaken the prayer for an injunction. If the prayer for injunctive relief could be determined to be frivolous or premature or otherwise "wanting in equity," then the suit could be considered solely a declaratory action and the *Brillhart* holding would clearly apply. *See* Public Service Commission v. Wycoff Company, 1952, 344 U.S. 237, 240–241, 73 S.Ct. 236, 238, 97 L.Ed. 291. But the district court made no such determination, and on the record before us we cannot do so. Both parties have repaired to the courts to settle their dispute and have alleged that in the rela-

tively near future Conoco definitely will be unable or unwilling to perform fully its gas sale contract with PPG. This state of affairs tends to indicate that a sufficiently concrete case or controversy exists between the parties and that the threatened harm is sufficiently imminent and certain that the prayer for an injunction is not premature. *See* Pierce v. Society of the Sisters of the Holy Name of Jesus and Mary, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070. If Conoco's conduct in failing to supply the amounts of gas agreed upon constitutes a breach of contract—an issue which we, of course, do not decide—then an injunction might ultimately be a proper remedy. *See* Standard Oil Company v. Lopeno Gas Company, 5th Cir. 1957, 240 F.2d 504.

█ █ While we are thus unable to agree with Conoco that *Brillhart* controls this case, we do believe that *Brillhart* and cases [7] decided after it and after *Meredith* have made manifest a policy against dual litigation which applies with equal force to declaratory actions and to ordinary equity suits, and which, though not included in the *Mededith* list of exceptional circumstances, has given rise to a discretionary power in the federal courts to stay proceedings in equity suits in deference to a parallel state action. Two of the bases underlying the policy to which we refer are seen in the *Brillhart* opinion:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same is-

---

da Company, 1959, 360 U.S. 185, 79 S. Ct. 1060, 3 L.Ed.2d 1163, and McClellan v. Carland, 1910, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762. *But see* Ermentrout v. Commonwealth Oil Company, 5th Cir. 1955, 220 F.2d 527, 530 (dictum).

7. *See, e. g.*, Provident Tradesmens Bank & Trust Company v. Patterson, 1968, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed. 2d 936; Abbott Laboratories, Inc. v. Gardner, 1967, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681; Mechling Barge

Lines v. United States, 1961, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317; Public Service Commission v. Wycoff Company, 1952, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291; Eccles v. Peoples Bank of Lakewood Village, 1948, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784; Alabama State Federation of Labor v. McAdory, 1945, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725; Great Lakes Dredge & Dock Company v. Huffman, 1943, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407.

sues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

316 U.S. 495, 62 S.Ct. 1175. This language recognizes that duplicate litigation in federal and state courts abrades to some extent the spirit of federal-state comity—that even when the two courts of concurrent jurisdiction do not require control over an identifiable res, concurrent litigation of the same controversy is perceived as interference. Secondly, the quoted sentences show concern for economy of judicial time and a disinclination to encourage duplication of effort. *See also* Kerotest Manufacturing Company v. C-O-Two Fire Equipment Company, 1952, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200. In the decades since *Brillhart*, of course, the increasingly crowded dockets of the federal courts have magnified the importance of this practical consideration. *See* Aetna State Bank v. Altheimer, 7th Cir. 1970, 430 F.2d 750, 756. A parallel consideration supporting the policy against dual litigation is the undesirability of imposing on the litigants and the witnesses the double burden of two trials. *See id* at 758. Finally, the courts have recognized as generally "unwanted and highly undesirable [the] race by each party to obtain a decision from the particular . . . court reacting most favorably to its position." ACF Industries, Inc. v. Guinn, 5th Cir. 1967, 384 F.2d 15, cert. denied 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140.

■■ In the context of federal actions attacking state criminal proceedings or the collection of federal taxes the Supreme Court has explicitly held that the factors governing the decision to grant or withhold an injunction or declaratory relief are largely the same, *see* Samuels v. Mackell, 1971, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688; Great Lakes Dredge & Dock Company v. Huffman, 1943, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407, and in our view it is logical that similar considerations should underlie the decision to grant either form of remedy in a diversity action involving only private rights as well. As the Supreme Court observed in *Meredith*, a declaration of rights is normally a prerequisite to an award of injunctive relief, whether or not the plaintiff prays for a declaratory judgment. Likewise, a declaratory judgment, though not itself coercive, may serve as the basis for subsequent injunctive relief in an appropriate case. *See* 28 U.S.C.A. § 2202. The close relationship of the two remedies, both of which are discretionary,[8] logically and properly calls for consideration of similar factors in deciding whether either should be granted.

Since *Meredith* was decided in 1943, the cases have relied increasingly on the same criteria in considering the appropriateness of the two remedies when they are both sought in the same case. In Lear Siegler v. Adkins, 9th Cir. 1964, 330 F.2d 595, an action by a patent licensee against a patent holder for a declaratory judgment that the patent was invalid and an injunction, the district court had stayed proceedings pending the outcome of a state suit filed three years earlier by the patent holder against the licensee for damages. The issues and parties in both suits were the same. The Ninth Circuit, in affirming the stay, relied heavily on *Brillhart* and other declaratory judgment cases and made no distinction between the *Brillhart* considerations applicable to a declaratory suit and those applicable to a suit for both declaratory and injunctive relief.

In Occidental Life Insurance Company v. Nichols, 5th Cir. 1954, 216 F.2d 839, this court ordered that an action by an insuror against its insured for a declaration of non-liability and the equitable

8. While the discretionary nature of traditional equitable remedies derives from history, the source of the discretionary power to abate a declaratory action is the Declaratory Judgment Act itself, which "was an authorization, not a command." Public Affairs Associates, Inc. v. Rickover, 1962, 369 U.S. 111–112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604.

relief of recision be stayed pending the outcome of a prior state action by the insured for payment of benefits due under the contract. The court recognized that the prayer for recision made the strict holding of the *Brillhart* line of cases inapplicable and reversed the district court's dismissal of the action, but concluded nevertheless that a stay pending final disposition of the state suit was the appropriate course. *See also* Milk Drivers and Dairy Employees Local Union, Local No. 338 v. Dairymen's League Co-operative Association, Inc., 2nd Cir. 1962, 304 F.2d 913.

Language in Supreme Court cases since *Meredith* indicates that that tribunal has also decided the propriety of granting or withholding injunctive relief under criteria similar to those applicable when only a declaratory judgment is sought. In Eccles v. Peoples Bank of Lakewood Village, 1947, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784, the plaintiff bank prayed for a declaratory judgment that a condition under which it became a member of the Federal Reserve System was invalid and an injunction against its enforcement. No parallel state action was pending. The court stated, "A declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest," 333 at 431, 68 S.Ct. at 644, and it ultimately held "the Bank's grievance here is too remote and insubstantial, too speculative in nature, to justify an injunction against the Board of Governors, and therefore equally inappropriate for a declaration of rights." 333 U.S. at 434, 68 S.Ct. at 645. Mr. Justice Reed, dissenting from the Court's holding of prematurity, stated:

> This Court has discretion to refuse to consider a petition for a declaratory judgment and an injunction to stop a threatened or existing injury. . . That discretion is not unfettered. . . There is no difference between declaratory suits involving an equitable remedy and other equity suits. Where an actual controversy with federal juris-

diction exists over the legal relations of adverse parties, discretion usually cannot properly be exercised by refusing an adjudication. Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9; cf. Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939. Unusual circumstances, not here present, such as other pending suits, Brillhart v. Excess Insurance Co. of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620, or supersession of state authority, Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407, sometimes justify refusal of relief.

333 U.S. at 436, 68 S.Ct. at 646–647. Significantly, both the majority and the dissent considered the propriety of granting declaratory and injunctive relief under the same criteria, and the dissent clearly indicated an understanding that the *Brillhart* considerations would apply to a suit for both remedies and that the pendency of another suit should be regarded as an "unusual circumstance," which might warrant the withholding of equitable relief. The Supreme Court grouped the declaratory and injunctive remedies together more recently in Abbott Laboratories v. Gardner, 1967, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681:

> The injunctive and declaratory remedies are discretionary. . . .
>
> Further, the declaratory judgment and injunctive remedies are equitable in nature, and other equitable defenses may be interposed. If a multiplicity of suits are undertaken in order to harass the Government or to delay enforcement, relief can be denied on this ground alone. Truly v. Wanzer, 5 How. 141, 142, 12 L.Ed. 88; cf. Brillhart v. Excess Ins. Co., . . . .

387 U.S. at 148, 155, 87 S.Ct. at 1515, 1519.

■ Upon consideration of the authorities, we conclude that in an equity suit, the federal district court has discretionary power to stay its hand pending the outcome of a parallel state action. We are aware that stays have

been upheld in some cases which were legal rather than equitable or declaratory in nature. *See, e. g.,* Aetna State Bank v. Altheimer, 7th Cir. 1970, 430 F.2d 750; Thompson v. Boyle, 5th Cir. 1969, 417 F.2d 1041, cert. denied, 397 U.S. 972, 90 S.Ct. 1088, 25 L.Ed.2d 266; Amdur v. Lizars, 4th Cir. 1967, 372 F.2d 103; Ray v. Hasley, 5th Cir. 1954, 214 F.2d 366; Beiersdorf & Company, Inc. v. McGohey, 2nd Cir. 1951, 187 F.2d 14; Mottolese v. Kaufman, 2nd Cir. 1949, 176 F.2d 301. And some of these suggest that the court's power to stay pending determination of a state action is not dependent on the equitable or declaratory character of the relief sought but is part of the court's inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Company, 1936, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153. This court has previously declined to express its full assent to this broader view, Thompson v. Boyle, *supra,* and we need not do so today.

■ We recognize that a stay pending final determination of a state suit between the same parties and the same issues will probably have the same practical effect as a dismissal would have, since the state judgment when final may be pleaded as res judicata in the federal action. Amdur v. Lizars, *supra;* Mottolese v. Kaufman, *supra; cf.* McClennan v. Carland, 1910, 217 U.S. 268, 282, 30 S.Ct. 501, 504–505, 54 L.Ed. 762. Despite the probability that the stay of the federal suit will have this effect, we do not believe the action should be dismissed. A stay is the preferable order because:

> Conceivably state action could be quite unreasonably delayed or other factual situations not now anticipated might develop in the state litigation which would cause the district court on appropriate petition to desire to reactivate and to go forward with the pending but presently stayed action.

Aetna State Bank v. Altheimer, *supra* 430 F.2d at 756.

## II.  Proper Exercise of Discretion to Stay

■ Conoco argues that the district court's decision to stay should not be disturbed on appeal except for an abuse of discretion. We agree with this proposition generally, but because of the probable dismissal-like effect of a stay to permit a state court to decide the case first, we think the appellate court must subject the district court's exercise of discretion to a relatively strict standard of review. Many discretionary decisions may be reversed on appeal only if the appellate court finds they were arbitrarily made or that no reasonable man would have decided the question as the trial judge did. *See* Delno v. Market Street Railway Company, 9th Cir. 1942, 124 F.2d 965, 967. Other types of actions, including the decision to grant or withhold declaratory relief, are discretionary in the sense that no single rule governs all situations, but are subject to a stricter standard of review which permits an appellate court to substitute its judgment for that of the trial court, even though the latter's action was not arbitrary and capricious. Broadview Chemical Corporation v. Loctite Corporation, 2nd Cir. 1969, 417 F.2d 998, cert. denied, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970); *see* 6A Moore's Federal Practice ¶ 57.08 [2] (1972). This stricter standard of review must logically apply to our examination of the district court's decision to withhold equitable relief pending a state determination as well.

■ In exercising its discretion to grant or deny a stay in an equity suit pending a determination of a parallel state suit—one involving the same parties and the same issues as the federal suit—the district court should consider several factors. Fundamentally, the district court should determine whether the state action provides an adequate vehicle for adjudicating the claims of the parties and whether the federal action serves some purpose beyond mere duplication of effort.

[A] district court . . . should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law can better be settled in the proceeding pending in the state court. This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there. The federal court may have to consider whether the claims of all parties and interests can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc.

Brillhart v. Excess Insurance Company, 1942, 316 U.S. 491, 496, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620. The advantages of obtaining in one suit or the other joinder of more parties affected by the controversy, even though they are not indispensable parties to the litigation, may be decisive in a given case. *E. g.,* Thompson v. Boyle, *supra.* The chronological order in which the suits were filed is not controlling, when the suits are in personam rather than in rem, but priority is a factor entitled to some consideration. *See* Employers' Liability Assurance Corporation v. Mitchell, 5th Cir. 1954, 211 F.2d 441, cert. denied, 347 U.S. 1014, 74 S.Ct. 869, 98 L.Ed. 1137; Carbide & Carbon Chemicals Corporation v. United States Industrial Chemicals, 4th Cir. 1944, 140 F.2d 47, 49. The prospects of early completion of the state suit should also be considered, Mottolese v. Kaufman, *supra* 176 F.2d at 303, as should any unique factors in the particular case which bear on the fairness of a stay to the parties, particularly to the party or parties opposing the stay. Aetna State Bank v. Altheimer, *supra* 430 F.2d at 758.

The federal district court in this case determined that the Texas state suit and the Louisiana federal suit "presented for judicial determination the same controversy," and that the "Texas court is perfectly capable of deciding whether Louisiana or Texas law should control in the adjudication of the matter, and of correctly applying whichever law is applicable." The court named as its sole ground for granting the stay "the generally recognized rule that the court first acquiring jurisdiction should be permitted to proceed without interference from a court of another jurisdiction." These determinations made by the district court, and borne out by the record, tend to support the discretionary decision to stay pending the outcome of the Texas suit. In addition, the record reflects that at least three of Conoco's other gas customers with contract and supply difficulties similar to those of PPG have been joined as declaratory defendants in Texas, but could not be joined in a federal suit in Louisiana without destroying diversity; the presence of these additional parties in the Texas suit, while not strictly necessary to a declaration of rights under the PPG-Conoco contract, will permit a more advantageous perspective on what may be viewed as a single, multi-party controversy. Nothing has come to the attention of this court which would indicate a stay would be unfair to PPG. We understand PPG's desire to litigate the controversy in a Louisiana forum under a choice-of-laws rule, which it believes is more favorable to its position, and Conoco's desire to litigate in Texas, and we do not fault PPG or Conoco for the procedural fencing and maneuvering in which each has engaged for the purpose of advancing its interests. But we cannot say that either the Texas or the Louisiana choice-of-law rule is more or less fair than the other, and we perceive no unfairness in requiring PPG to pursue settlement of this controversy in only a single forum, which we are confident is equal to the task presented to it. PPG has not suggested that adjudication by the Texas court will be unduly delayed or that it cannot secure the same coercive relief in the Texas suit, if it should ultimately prevail, which it has sought in the federal suit, either by way of

counterclaim or by a subsequent suit or application to the Texas court based on the declaratory judgment which will be rendered.

Accordingly, we believe the exercise of discretion by the district court in this instance was proper, and its judgment is

Affirmed.