Sidney B. WEINER,
Plaintiff-Appellant,

v.

SHEARSON, HAMMILL & CO., INC.,
a corporation, Defendant-Appellee.

No. 72–1294.

United States Court of Appeals,
Ninth Circuit.

Aug. 1, 1975.

818

Sheldon Mitchell (argued), Phoenix, Ariz., for plaintiff-appellant.

John S. Hobbs (argued), Phoenix, Ariz., for defendant-appellee.

OPINION

Before CHAMBERS, KOELSCH and SNEED, Circuit Judges.

CHAMBERS, Circuit Judge:

Weiner brought this action in the Arizona District Court against his stockbroker, Shearson, Hammill & Co., Inc., alleging that the company had mishandled the sale and purchase of certain shares in Weiner's account in such a way as to violate the federal securities laws. Weiner sought a declaration that he owed the company nothing, and a judgment for compensatory damages for the diminution in value of the shares, and for punitive damages. The company moved for a dismissal of the action on the grounds that the complaint failed to state a claim upon which relief could be granted, or alternatively, that the action should be dismissed or stayed in deference to an identical action involving the same parties and the same transactions already pending in the Arizona Superior Court. The district court granted the motion to dismiss, but did not disclose the basis for its order. Weiner then brought this appeal. At oral argument, we directed the parties to augment the record with the record of the proceedings in the Arizona Superior Court, and that record is now before us. For the reasons hereinafter stated, we reverse the order of dismissal and remand the case for further proceedings.

In his complaint, Weiner alleged that he was the owner of shares of National Trust Life Insurance Company of America. He turned these shares over to Shearson, Hammill & Co. and instructed them to investigate the marketability of the shares. The company then made the following representations to Weiner through the mail: because of a merger, the shares were now marketable in the form of shares of Community National Life Insurance Company; the company had exchanged the National Trust Life shares for the equivalent Community National Life shares; and it had transferred these shares to its street name and had then sold them on the open market. Weiner received confirmations of these transactions and the proceeds of the sale.

The company allegedly did not follow this represented course of action. Instead, it had sold its own account short on Community National Life shares. Later it was forced to cover this short sale by buying Community National Life shares on the open market at approximately twice the price that the shares had been trading at when the short sale was made. This difference was charged to Weiner's account, and the company has refused to release or transfer this account until the amount is paid. The trading price of Community National Life has since declined, and Weiner's shares have become nearly valueless. At no time was the company authorized to transfer or sell any of Weiner's shares.

As a result of these alleged transactions, Weiner, who is himself a practicing lawyer, decided to institute legal proceedings. In February 1971, he filed a pro se complaint in the Maricopa County Superior Court, alleging that the company had breached the brokerage agreement between them. Thereafter, various proceedings took place, including the filing of an amended complaint. Eventually, Weiner, who was no doubt acting with the familiar adage in mind, retained another lawyer to continue the action for him.

On June 15, 1971, Weiner's counsel filed a second amended complaint that transformed the action from one based on breach of contract to one based on violations of the federal securities laws. On the same day, counsel filed a virtually identical complaint in the district court for the district of Arizona and thereby commenced the present action.

In the district court, Shearson, Hammill moved to dismiss the action or to stay the proceedings pending a resolution in the state court. The district court granted the motion to dismiss.

The parties returned to the state court, and after that court denied motions to dismiss, Shearson, Hammill filed its answer and a counterclaim for the amount alleged to be owing to it from Weiner. Weiner answered, and some discovery was undertaken. At present, the case is by stipulation on the Superior Court's inactive calendar awaiting the outcome of this appeal.

At the outset, we are placed at a disadvantage in not having a clear statement of the grounds upon which the district court relied in granting the motion to dismiss. However, in view of the disposition, we make of this matter, we think it would be not only unnecessary but also premature to consider whether the district court could properly have based its dismissal in whole or in part upon a conclusion that the complaint failed to state a claim. For if the district court was of the opinion that it could properly grant the motion to dismiss or stay the action in deference to the prior pending state action, it should not have reached the question of whether a claim was sufficiently stated. *Aetna State Bank v. Altheimer*, 430 F.2d 750, 752–53 (7th Cir. 1970).

The existence of a power in the federal court to refrain from exercising its jurisdiction has long been a question of some uncertainty. Early pronouncements of the Supreme Court suggested that the federal courts could never decline to exercise jurisdiction over controversies properly before them. *See, e. g., Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 403, 5 L.Ed. 257 (1821); *Chicot County v. Sherwood*, 148 U.S. 529, 534, 13 S.Ct. 695, 37 L.Ed. 546 (1893); *McClellan v. Carland*, 217 U.S. 268, 281–82, 30 S.Ct. 501, 54 L.Ed. 762 (1910). This theory of an absolute right of access to an available federal forum has gradually given way to the recognition of a number of exceptions which in their aggregate suggest that the absolutist nature of the theory retains little vitality.[1]

---

1. *Mottolese v. Kaufman*, 176 F.2d 301 (2d Cir. 1949).

   For a review of the development and decline of the theory of absolute right of access, see Note, Power to Stay Federal Proceedings, 59 Yale L.J. 978 (1950) and Note, Stays of Federal Proceedings, 60 Colum.L.Rev. 684 (1960).

These exceptions can be broadly grouped into three categories.[2] The most closely circumscribed category is commonly known as the doctrine of the abstention. Abstention is required only in those relatively few instances where the exercise of jurisdiction would create unwarranted friction between the federal and state sovereigns. Thus, for example, where the federal court may avoid the decision of constitutional issues by requiring the parties to seek in the state courts an authoritative construction of doubtful state law, the federal court should abstain. *Railroad Commission v. Pullman Company*, 312 U.S. 496, 500–01, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

The abstention doctrine, it should be noted, is no way dependent on the presence or absence of a concurrent state court action between the parties. In *Chicago v. Fieldcrest Dairies*, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355 (1942), in which the Court found abstention to be required, the institution of a parallel action in the state court was found significant only in that it demonstrated the availability of a state forum to resolve the uncertain question of state law. *Id.* at 173, 62 S.Ct. 986. Conversely, the existence of a prior pending state court action involving a collateral dispute between the same parties is alone not sufficient reason to invoke abstention. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); *Mach-Tronics, Inc. v. Zirpoli*, 316 F.2d 820 (9th Cir. 1963).

The second category comprises cases stayed or dismissed for reasons of *forum non conveniens*. *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Koster v. Lumberman's Mutual Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). Cases invoking this doctrine do not turn on the existence of any pending parallel litigation, but the doctrine does presuppose the availability of another, more convenient forum.

Finally, there is the class of cases such as the present one in which the parties are seeking to litigate the same or closely related claims in two forums simultaneously. The state courts have long recognized that in such situations, the later filed action may be abated. *Note, Power to Stay Federal Proceedings*, 59 Yale L.J. 978, 978–80 (1959). A variety of considerations have been cited in support of such abatement: the friction created by the appearance that the second court is interfering with the first; the waste of judicial resources caused by litigation in two courts; the unnecessary burden placed on already overcrowded dockets; the dual burden placed on litigants; and the possibility that dual litigation might involve the courts in an unseemly race to judgment. *See PPG Industries, Inc. v. Continental Oil Company*, 478 F.2d 674, 680 (5th Cir. 1973).

The federal courts have had some difficulty in incorporating the abatement doctrine into their practice. Where two federal district courts are involved, there has been little trouble in finding a discretionary power to abate the second action. *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Filtrol Corporation v. Kelleher*, 467 F.2d 242 (9th Cir. 1972), *cert. denied*, 409 U.S. 1110, 93 S.Ct. 914, 34 L.Ed.2d 691 (1973). Similarly, where the parallel litigation is pending before a federal administrative agency, we have recognized a discretionary power in the district court to stay its hand. *Chronicle Publishing Co. v. National Broadcasting Co.*, 294 F.2d 744 (9th Cir. 1961). Since in such cases the litigants are not deprived of a federal forum, the considerations of

---

**2.** There is also a generally recognized fourth category which stands upon different ground from those mentioned in the text. In actions which are *in rem* or *quasi in rem*, the court, which first acquires jurisdiction over the *res* alone has jurisdiction to resolve the controversy. *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285 (1939).

judicial economy and interference with orderly administrative procedure have proved paramount.

■ However, where the prior action has been brought in a state court, there has been some reluctance to recognize a broad power to stay the federal action under all circumstances. *See, e. g., PPG Industries, Inc. v. Continental Oil Company,* 478 F.2d 674, 682 (5th Cir. 1973); *cf. Thompson v. Boyle,* 417 F.2d 1041, 1042 (5th Cir. 1969), *cert. denied,* 397 U.S. 972, 90 S.Ct. 1088, 25 L.Ed.2d 266 (1970). Undoubtedly, where the federal action seeks only declaratory relief, the discretionary power inherent in the nature of the remedy enables the court to abate the action in deference to the state court. *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). Similarly, the discretionary nature of other equitable remedies allows the federal court to stay action. *PPG Industries, Inc. v. Continental Oil Company, supra*; *see Lear Siegler v. Adkins,* 330 F.2d 595 (9th Cir. 1964).

But when the action is at law, a few courts still have felt constrained by the old pronouncements that a federal court would be derelict in its duty if it "practically abandoned its jurisdiction over a case of which it had cognizance, and turned the matter over for adjudication to the state court." *McClelland v. Carland, supra* at 281, 30 S.Ct. at 504. In our view, such statements simply have no application to cases involving abatement. Rather, cases such as *McClellan* and *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943), say merely that on the facts there presented, the federal courts were not justified in invoking the doctrine of abstention and relegating the parties to an as yet uncommenced action in the state courts. The Supreme Court had no need to consider the weight to be given to the considerations of economy and judicial dignity because there was no problem of competing litigation in the state and federal forums.

■ We thus conclude that the district court possessed the power to abate the present action, even though it be one both for a declaratory judgment and damages. In so concluding, we join a number of other circuits. *Mottolese v. Kaufman,* 176 F.2d 301 (2d Cir. 1949); *Amdur v. Lizars,* 372 F.2d 103 (4th Cir. 1967); *Aetna State Bank v. Altheimer,* 430 F.2d 750 (7th Cir. 1970). *See Thompson v. Boyle,* 417 F.2d 1041 (5th Cir. 1969), *cert. denied,* 397 U.S. 972, 90 S.Ct. 1088, 25 L.Ed.2d 266 (1970).

■ Turning now to the case at bar, we first note that even if abatement were proper in this case, dismissal of the action was not the appropriate method. Instead the district court should have stayed the action pending either the outcome of the state action or a timely suggestion by either party that the reasons which had prompted the stay had ceased to apply. *Shareholders Management Company v. Gregory,* 449 F.2d 326 (9th Cir. 1971).

Whether a stay is appropriate is a more difficult question. It is clear that at the outset of the federal suit, the issues presented before the two courts were identical. The federal complaint is virtually a carbon copy of the second amended state complaint, except for a few immaterial changes made to conform to federal practice. But it would appear that at the outset of the federal suit, there was a serious question whether the state court had complete jurisdiction to pass upon all of the claims purportedly stated in the second amended complaint.

■ That complaint purportedly states a claim under § 17(a) of the Securities Act of 1933 [15 U.S.C. § 77q(a)], and to the extent that it may do so, the state court has jurisdiction. 15 U.S.C. § 77v(a). But the complaint also purports to state claims under §§ 10(b) and 15(c)(1) of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78j and 78o(c)(1)] and Rule 10b–5 and Rules of the New

York Stock Exchange 401 and 405. At the time the federal action was dismissed, it may well be that state court lacked jurisdiction to entertain these claims.[3] However, subsequent to the dismissal, Shearson, Hammill filed its answer and a counterclaim seeking recovery of the amount allegedly owing on the stock transaction, and Weiner answered, alleging as an affirmative defense the misrepresentations which form the core of his second amended complaint. At this point, the state court apparently had jurisdiction to rule on the 1934 Act issues as a matter of affirmative defense. *Shareholders Management Co. v. Gregory, supra; Aetna State Bank v. Altheimer, supra.*

■■■■■ Hence, since we must reverse the order of dismissal, we do so without limitation so as to allow the district court to consider whether, given the present posture of the state court action, a stay of the federal action would be appropriate. We note that even if the state court finds itself precluded from giving affirmative relief under the 1934 Act (assuming it ever reaches that question), a stay would not necessarily be inappropriate. The state court does have power to grant the parties relief under the 1933 Act or the state law counterclaim, and in doing so, it also may or may not resolve the 1934 Act issues. *See Klein v. Walston & Co.,* 432 F.2d 936 (2d Cir. 1970). *Cf. Watson v. Roberts, Scott & Co., Inc.,* 466 F.2d 1348 (9th Cir. 1972).

The order of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

---

**3.** 15 U.S.C. § 78aa.

*Brenner v. Mitchum, Jones & Templeton, Inc.,* 494 F.2d 881 (9th Cir. 1974), appears to suggest to the contrary. Significantly, however, nowhere in that opinion does the court discuss the effect of the exclusive grant of jurisdiction under the 1934 Act.