John Z. MILLER and Mary E. Miller, husband and wife, Plaintiffs,

v.

Paul D. CARR, personally and in his capacity as Planning Director of the City of Port Angeles, Washington; Carole Boardman, Harold Buck, Dorothy Duncan, John Hordyk, and Robert Polhamus, in their capacities as City Councilmen of the City of Port Angeles, Washington; and Werner Quast, personally and in his capacity as City Councilman of the City of Port Angeles, Washington; Sam Haguewood, in his capacity as Mayor of the City of Port Angeles, Washington; and The City of Port Angeles, Washington, a Municipal Corporation of the State of Washington, Defendants.

No. C81–370C.

United States District Court, W. D. Washington.

April 8, 1982.

Richard A. Wyman, Henry A. Carey, P.C., Portland, Or., Marcia A. Mellinger, Seattle, Wash., for plaintiffs.

Craig L. Miller, City Atty., City of Port Angeles, Port Angeles, Wash., Dennis Smith, Reed, McClure, Moceri & Thonn, P.S., Seattle, Wash., for defendants.

## ORDER DISMISSING COMPLAINT

COUGHENOUR, District Judge.

Plaintiffs Miller sought to develop certain real property located in the city of Port Angeles, Washington. The City Council, one of the defendants here, conditioned approval of plaintiffs' plat on plaintiffs' agreement to undertake certain street improvements. Plaintiffs filed suit in Washington State Superior Court, seeking a judicial declaration that the preconditions to plat approval violated their constitutional rights, and seeking damages for the City's alleged violation of the terms of an agreement between the parties relating to the development. Shortly thereafter plaintiffs filed this action, seeking declaratory relief and damages for the alleged deprivation of their civil rights. The state court found the preconditions invalid. The second phase of the state proceedings has yet to commence. This Court is of the opinion that in order to avoid duplicative litigation, and in the interest of federalism and comity, dismissal is appropriate here. It is so ORDERED.

## FACTS GENERALLY

Plaintiffs John Z. Miller and Mary E. Miller ("plaintiffs") own certain real property in Port Angeles, Washington, consisting of 13.4 acres, described as Uplands Division No. 4 ("the property"). In March 1973 the property was annexed to the City and zoned "residential multi-family." At the same time, plaintiffs entered into an agreement with the City which required the owner of annexed property to pay in advance the cost of paving and curbing the streets to be built within the boundaries of his property. Plaintiffs allege that this agreement with the City permitted them, in return for their payment, to proceed with multi-family development without making expenditures other than those required by the agreement.

On April 14, 1978 plaintiffs applied to the City for a preliminary plat to permit the construction of multi-family dwellings on their property. On May 5, 1978 defendant Carr, in his capacity as City Planning Director, issued a Final Declaration of Significance, requiring plaintiffs to prepare a detailed environmental impact statement. Plaintiffs subsequently withdrew their application from consideration. On November 6, 1978 plaintiffs again filed an application for a preliminary plat for the property. On December 7, 1978 defendant Carr issued a Final Declaration of Significance, initiating the environmental impact process in connection with plaintiffs' application. Plaintiffs proceeded to prepare an environmental impact statement. On July 15, 1980 the City Council approved the plat, but in so doing excluded certain preconditions to plat ap-

proval which had been recommended by the City Planning Commission. On July 29, 1980 the Council reconsidered its earlier decision and voted to include the previously rejected preconditions. It is these controversial requirements which are the basis of plaintiffs' claims.

In essence, the conditions to which plaintiffs took exception would have obliged them to make substantial and expensive improvements to two separate roads in Clallam County. The first, Melody Lane, was a street wholly outside the City of Port Angeles. The second, known as Golf Course Road, was an arterial street partially within the City and partially without. The improvements, and plaintiffs' proportionate responsibility therefor, were sought in part to accommodate the increased traffic that was expected to result from plaintiffs' subdivision. Plaintiffs allege that the City had never before imposed such conditions upon an applicant for a preliminary plat.

Plaintiffs filed their Complaint in this Court on March 24, 1981. In it they allege that the conditions at issue deprived them of the use of their property, in violation of their Fifth and Fourteenth Amendment rights to due process and equal protection. Plaintiffs also allege an unconstitutional "taking." They seek $1.65 million in actual damages, and $2 million in punitive damages. Plaintiffs contend that a cause of action accrues to them under the Civil Rights Act, 42 U.S.C. § 1983, and that jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331 and 1343. Plaintiffs assert no other basis for this Court's jurisdiction.

## STATE COURT PROCEEDINGS

On August 27, 1980 plaintiffs commenced an action in the Superior Court of the State of Washington for Clallam County. The state court action was in the nature of a writ challenging the decision of the Port Angeles City Council to impose additional conditions on plat approval. As originally filed, the plaintiffs' Complaint sought a judgment declaring the offensive conditions invalid, and sought damages in tort for alleged interference with a business expectancy. On May 29, 1981 plaintiffs amended their Complaint to state a cause of action for breach of contract. The factual allegations in the state court Complaint, both as originally filed and as amended, are identical to those contained in the Complaint filed here.

On June 4, 1981 the Superior Court delivered an oral opinion which addressed some, but not all, of the questions at issue there. The Court found that the City Council's action, in imposing conditions on plaintiffs pertaining to Melody Lane, was *ultra vires*, insofar as that particular thoroughfare was entirely outside the City's jurisdiction. In addition, the Court noted that the conditions relating to Golf Course Road were also invalid, in that they bore a suspicious resemblance to a special assessment, for which plaintiffs had been unfairly singled out. The Superior Court noted in dicta that in its opinion, plaintiffs' Fourteenth Amendment rights had been violated.

The Superior Court action is far from resolved. Plaintiffs apparently have not sought—and the Court has not entered—an order formalizing the oral opinion of June 4, 1981. It has been the understanding of the parties since that time that the Superior Court trial would be resumed at some later date, to resolve, at the very least, the issue of damages. The scope of the Superior Court action is considerably broader than that, however. On March 4, 1982 the Superior Court handed down a Memorandum Opinion denying defendants' summary judgment motions, effectively leaving plaintiffs' tort and contract claims for disposition at the time of trial. On March 12, 1982 plaintiffs were given leave to amend their Complaint yet once more, to state a cause of action for negligence. The trial date in the Superior Court action is still several months hence.

## JURISDICTION GENERALLY

Pending before this Court are two motions: defendants' motion to dismiss the Complaint, and plaintiffs' motion for summary judgment. Plaintiffs urge, in opposi-

tion to defendants' motion to dismiss, that their Complaint states a claim under the Civil Rights Act, 42 U.S.C. § 1983. The Court assumes, *arguendo*, that it does. Plaintiffs' pleadings strongly suggest, however, that plaintiffs may erroneously believe that such claims are the exclusive province of the federal courts. To the contrary, it is well-established that that jurisdiction to entertain suits under the Civil Rights Act is concurrent in the state and federal courts. Indeed, "the federal remedy is supplementary to the state remedy." *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). In enacting § 1983 "Congress was adding to the jurisdiction of the federal courts, not subtracting from that of the state courts." *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980). The legislative history of the Act suggests that in conferring jurisdiction upon the federal courts, Congress merely intended that those courts should step in where state courts were unable or unwilling to protect federal rights. *See Monroe v. Pape, supra*, 365 U.S. at 180, 81 S.Ct. at 480. The Washington State Superior Court for Clallam County has clearly demonstrated its willingness to protect such rights, as evidenced by its ruling of June 4, 1981. There is nothing which would bar that Court from resolving the § 1983 questions at issue here, and, if appropriate, granting relief under federal standards.

## DUPLICATIVE LITIGATION DISFAVORED

The action pending before this Court is virtually identical to that action, discussed above, pending in the Washington State Superior Court. A review of the pleadings in the two cases reveals that the factual allegations are identical, that the relief prayed for is similar, and that the same central issue is presented in both cases: the propriety of the preconditions to plat approval which the City sought to impose on the plaintiffs. The salient differences are a prayer for $2 million in punitive damages in the federal action, the presence of tort and contract claims in the state suit, and varying degrees of emphasis on constitutional and common law issues.

This Court is persuaded that the two actions are essentially duplicative. Plaintiffs' motion for summary judgment is principally and expressly based on the Oral Opinion of the Clallam County Superior Court. That Court found the objectionable preconditions unenforceable, and noted that in its view, plaintiffs' Fourteenth Amendment rights had been violated. Plaintiffs argue that the doctrines of collateral estoppel and *res judicata* dictate the same finding here. Such an argument persuades the Court that it is plaintiffs' belief that the actions are substantially identical.

Duplicative litigation is, understandably, disfavored. Not only does such litigation unnecessarily burden the judicial resources of both the state and federal courts, it is also potentially prejudicial to the litigants. This Court is cognizant of the rule that the pendency of an action in a state court is no bar to proceedings concerning the same matter in a federal court. *McClellan v. Carland*, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910). "It is equally well settled that a district court is 'under no compulsion to exercise that jurisdiction,' *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942), where the controversy may be settled more expeditiously in the state court." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 662–63, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504 (1978). Whether to defer to the concurrent jurisdiction of a state court is a matter committed to the district court's discretion. *Id.* This is so even when matters of substantive federal law are involved. *Id.* Moreover, "it would be uneconomical as well as vexatious for a federal court to proceed in a . . . suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. *Brillhart, supra*, 316 U.S., at 495, 62 S.Ct., at 1175." *Id.* Here, the same parties are presenting the same issues to a state court. That court is fully empowered to hear the balance of plaintiffs' constitutional claims.

■ The Ninth Circuit has approved the dismissal of duplicative actions. *Weiner v. Shearson, Hammill & Co., Inc.*, 521 F.2d 817 (9th Cir. 1975), involved a state court proceeding wherein a stockbroker was sued for allegedly mishandling a securities transaction. The District Court abated an action on identical facts. In approving that action the Court cited considerations of limited judicial resources, the dual burden placed on litigants, and the already overcrowded federal dockets. *Id.*, 521 F.2d at 820. The Ninth Circuit has also voiced its disapproval of duplicative actions on a single contract for the same breach. In *Everett Plywood Corp. v. U. S.*, 512 F.2d 1082 (9th Cir. 1975), the Court wrote: "However, if the claimant, before filing its first suit, is in possession of all the facts on which its second suit is based, the splitting of the claims into multiple suits is fatal to maintenance of the later-filed action. *Container Transport International, Inc. v. U. S.*, 468 F.2d 926 [199 Ct.Cl. 713] (1972)." 512 F.2d at 1087. Later, in *State of Idaho ex rel. v. State Bd. of Bar Examiners*, 567 F.2d 858 (9th Cir. 1978), the Ninth Circuit reasserted this argument, stating that the appellant showed "no reason to justify the fracturing of this suit" between state and federal forums. It concluded that "Sound judicial policy requires the comprehensive disposition of litigation." 567 F.2d at 860. Considerations of judicial economy, fairness, and concern for the parties hereto persuade this Court that the comprehensive resolution of this litigation can best be effected in Superior Court.

## FEDERALISM AND COMITY

■ It has long been accepted that questions touching on state land use policy and the administrative processes incidental thereto are particularly well suited for disposition in the state courts. For instance,

in *Fralin and Waldron, Inc. v. City of Martinsville, Va.*, 493 F.2d 481 (4th Cir. 1974), the Fourth Circuit addressed questions not dissimilar to those here. In that case a land developer had claimed that local government officials had acted arbitrarily and unreasonably in refusing to grant zoning approval for the development of a parcel of land. The Court said:

"All of [appellant's] claims raise legitimate questions involving municipal zoning ordinances, the correct construction of local land use law as to special use permits, and the delineation of the proper scope and exercise of local administrative discretion. Understandably, the courts of Virginia have extensive familiarity and experience with such matters, and we believe that they should have the initial opportunity to pass upon them. *A state adjudication may well avoid the necessity of a decision on the federal constitutional question presented as well as avoid needless friction in federal-state relations over the administration of purely state affairs.*" 493 F.2d at 482–83 (emphasis added).

*See, also, Sea Ranch Association v. California Coastal Zone Conservation Commissions*, 537 F.2d 1058 (9th Cir. 1976) (abstention appropriate when confronted with the uncertain application of a state statute).[1]

■ Although the case before the Court does not pose zoning or land use questions per se, the issue presented here, that of the lawfulness of the preconditions which the City attempted to impose on plaintiffs, is patently one imbued with similar considerations of local policy. Plaintiffs do not allege that the exactions here constituted a "special assessment." Plaintiffs do, however, argue that defendants' actions constituted an unconstitutional taking.

1. Plaintiffs will perhaps argue that abstention, rather than dismissal, is the appropriate action for the Court to take here. It is true that abstention is an approved mode of resolving land use disputes where questions of state law are in dispute. However, the plaintiffs have already filed, and are in the process of litigating, an action in state court, which is an entirely adequate forum not only for the resolution of

plaintiffs' tort and contract claims, but also their civil rights claims. Under all the circumstances here the Court concludes that the better approach is to dismiss the action altogether. Dismissal will encourage plaintiffs to avoid the uncertainty and delay which would be caused by piecemeal adjudication, were this Court to retain jurisdiction.

The arguments propounded in support thereof are by way of analogy to the doctrine of special assessments. The analogy is a useful one. Special assessments are uniquely creatures of state law. In Washington State, authority for special assessments is expressly derived from the State's constitution.[2] Procedures for effectuating the constitutional mandate are set forth in great detail in Washington statute.[3] The reasons for and means by which a municipality chooses to finance local improvements is, within limits, a matter best suited to local control. The Supreme Court has, in recent decisions, evidenced increasing respect for the states as states, and has recognized that the power of Congress and the federal courts to interfere with state policy and "integral government functions" is limited in many areas. *National League of Cities v. Usery*, 426 U.S. 833, 851, 96 S.Ct. 2465, 2474, 49 L.Ed.2d 245 (1965). *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Although the Court has yet to clearly define those limits, or to indicate the areas in which they may operate, it is apparent to this Court that it must tread lightly in areas as replete with local prerogative as those before it here.

██ The question which plaintiffs seek to have this Court address is essentially one of Washington law. Whether or not a municipality has the authority, pursuant to Washington statute,[4] to require the developer of a subdivision to pay for facilities which will not be used exclusively by residents of that subdivision, is the subject of considerable debate in Washington. A Washington state court has recently concluded that a local authority *could* constitutionally require a developer to incur costs for improvements which would not benefit his intended subdivision alone.[5] The Supreme Court of the State of Washington has accepted direct review of the trial court decision.[6] Questions such as these argue strongly for application of the time-honored notions of comity. For a federal court to exercise its jurisdiction in areas of important state or local domestic policy creates an "unseemly conflict between two sovereignties, [and] the unnecessary impairment of state functions ...." *Martin v. Creasy*, 360 U.S. 219, 224, 79 S.Ct. 1034, 1037, 3 L.Ed.2d 1186 (1959).

The principle involved here has been loosely described as federalism. The Supreme Court has provided a succinct exposition on the subject: "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided. *Brillhart,. supra*, 316 U.S., at 495, 62 S.Ct., at 1175." *Will v. Calvert Fire Ins. Co., supra*, 437 U.S. 655, 664, 98 S.Ct. 2552, 2558, 57 L.Ed.2d 504. The doctrine finds support, in similar factual settings, from a variety of jurisdictions. *See, e.g., Simmons v. Wetherell*, 472 F.2d 509, *cert. denied*, 412 U.S. 940, 93 S.Ct. 2777, 37 L.Ed.2d 399 (2d Cir. 1973) (alleged ineptitude in state condemnation proceedings gave rise not to a § 1983 action, but a tort action best resolved in state court); *Bonner v. Circuit Court of City of St. Louis, Mo.*, 526 F.2d 1331, *cert. denied*, 424 U.S. 946, 96 S.Ct. 1418, 47 L.Ed.2d 353 (8th Cir. 1975) (federal courts should permit state courts to try state cases; when § 1983 claims arise, state court judges are fully competent to handle them); *Kahn v. Shainswit*, 414 F.Supp. 1064 (S.D.N.Y.1976) (comity applies in § 1983 context where plaintiff is involved in ongoing state judicial proceeding in which he has available remedies); *Kelly v. Wyman*, 294 F.Supp. 893, *aff'd*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (S.D.N.Y. 1968) (proceedings to compel state officials to comply with their statutory or regulatory

---

2. Wash.Const. of 1889, art. VII, § 9 (1889).

3. RCWA 35.43 *et seq.* (1965).

4. RCWA 58.17, *et seq.*

5. *Hillis Homes v. Snohomish County*, Washington State Superior Court for Snohomish County, Cause No. 79–2–03902; findings, conclusions and order filed July 1, 1981.

6. *Hillis Homes v. Snohomish County*, Supreme Court of the State of Washington, Cause No. 47895–3. Petition for review filed July 20, 1981. Petition granted, February 5, 1982.

duties under § 1983 should generally be brought in the state courts). Were this Court to permit every disappointed property owner to come directly into federal court under § 1983, merely by alleging that a local land or revenue decision was unreasonable, arbitrary, or discriminatory, it would be assuming the functions of a municipal court of appeals. The Washington state courts should be afforded the initial opportunity of reviewing what is essentially a state question.

## CONCLUSION

For the reasons stated, plaintiffs' Complaint is hereby DISMISSED.