Robert BIRENBAUM, Appellant,

v.

BACHE & CO., INCORPORATED, Appellee.

No. 19247.

Court of Civil Appeals of Texas, Dallas.

Aug. 11, 1977.

Rehearing Denied Sept. 8, 1977.

Gerald R. Coplin, Passman, Jones, Andrews, Coplin, Holley & Co., Dallas, for appellant.

Corbet F. Bryant, Jr., Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellee.

ROBERTSON, Justice.

Bache & Co., Incorporated, sued Robert Birenbaum on a debt of $6,400.50, which represented a deficit in a margin commodity trading account. By way of affirmative defense and counterclaim, Birenbaum asserted certain violations of the margin regulations promulgated under the federal securities laws. The trial court granted an interlocutory summary judgment for Bache on the debt and dismissed Birenbaum's counterclaim for lack of jurisdiction. A final judgment was entered which incorporated the interlocutory summary judgment and the dismissal, and Birenbaum now appeals from the judgment entered against him for the debt. We hold that the federal regulations upon which Birenbaum bases his defense are inapplicable to commodity futures trading and, accordingly, affirm the judgment of the trial court.

In February of 1973 Birenbaum established a margin account with Bache. Pursuant to that account, Birenbaum was extended credit for the purchase of commodities. After trading for several months, there was a deficiency in the account which resulted in its liquidation. The present suit is based upon the deficit owed to Bache after the liquidation. Birenbaum's alleged affirmative defense is based upon the assertion that Bache has violated the margin requirements of the federal securities laws, which prohibit credit transactions by brokers that result in an excess of the debit balance in an account over the maximum loan value of the securities on deposit. He asserts that the regulatory violation precludes the broker from recovering any account deficits which result from unauthorized credit extensions.

The basic issue on this appeal is whether Birenbaum's summary judgment proof regarding his alleged affirmative defense raised fact issues which precluded the summary judgment on the debt. In order to decide this issue, we must first determine whether the exclusive federal jurisdiction over securities violations precludes state court adjudication of affirmative defenses based on regulatory violations. Secondarily, we must decide whether the margin regulations promulgated by the Securities and Exchange Commission apply to commodity futures trading accounts.

### Jurisdiction

Our threshold consideration is whether state court jurisdiction over affirmative defenses based on margin violations has been precluded by the exclusive federal jurisdiction granted by the Securities Exchange Act of 1934 § 27, 15 U.S.C. § 78aa (1971). That section provides:

The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have *exclusive jurisdiction* of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. [Emphasis added.]

█ While we recognize that this section precludes state court adjudication of direct

claims based upon violation of the federal securities regulations, it does not bar affirmative defenses based upon the federal securities laws from being asserted defensively in state courts. *Shareholders Management Co. v. Gregory,* 449 F.2d 326, 327 (9th Cir. 1971); *Aetna State Bank v. Altheimer,* 430 F.2d 750, 754 (7th Cir. 1970); II Loss, Securities Regulation 977–980 (2d ed. 1961); *cf. Pan American Petroleum Corp. v. Superior Court,* 366 U.S. 656, 662, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961) (exclusive federal jurisdiction granted under Natural Gas Act does not preclude state court adjudication of defenses based thereon); *Hampton House Management Corp. v. Saleh,* 357 F.Supp. 591, 593 (S.D.N.Y.1973) (exclusive federal jurisdiction conferred by Economic Stabilization Act held not to prohibit state decision of defenses raised under the Act). *See also* [1975] III Bromberg, Securities Fraud at 244.11.

▮ A similar question has arisen under the federal patent laws. In *Pratt v. Paris Gaslight & Coke Co.,* 168 U.S. 255, 259, 18 S.Ct. 62, 64, 42 L.Ed. 458, 460 (1897), the United States Supreme Court held that a statute which conferred exclusive federal jurisdiction over patent claims did not deprive the state courts of the power to determine *questions* arising under the federal statutes; rather, it only precluded state determination of *cases* arising under those laws. According to the Court:

> There is a clear distinction between a *case* and a *question* arising under the patent laws. The former arises when the plaintiff in his opening pleading—be it a bill, complaint, or declaration—sets up a right under the patent laws as ground for a recovery. Of such the state courts have no jurisdiction. The latter may appear in the plea *or answer* or in the testimony. The determination of such question is not beyond the competency of the state tribunals. [Emphasis added.]

*See also Pan American Petroleum Corp. v. Superior Court, supra,* 366 U.S. at 662, 81 S.Ct. 1303. We find this reasoning persuasive, particularly in light of the fact that, in the present case, plaintiff's claim was one based upon state law which, in the absence of diversity of citizenship, could not be brought in federal court. As Justice Frankfurter stated in *Pan American Petroleum Corp., supra:* " 'Exclusive jurisdiction' is given the federal courts, but it is 'exclusive' *only for suits that may be brought in the federal courts."* [Emphasis added.] The suit in the present case was brought on a debt, a traditional state cause of action. Since the issue of violation only appeared by way of defense, it is merely a question in the case, rather than a claim for relief. In such a case under the above authorities, state courts are not precluded from determining the issue.

### The Defense

▮ Birenbaum's defense is based upon Bache's alleged violation of Regulation "T," 12 C.F.R. § 220, promulgated under section 7(c) of the Securities Exchange Act of 1934, 15 U.S.C. § 78g (1971). In 12 C.F.R. § 220.-3(b)(1)(i), the regulation sets forth the following general rule:

> A creditor shall not effect for or with any customer in a general account, special bond account subject to § 220.4(i), or special convertible debt security account any transaction which, in combination with the other transactions effected in such account on the same day, creates an excess of the adjusted debit balance of such account over the maximum loan value of the securities in such account, or increases any such excess, unless in connection therewith the creditor obtains, as promptly as possible and in any event before the expiration of 5 full business days following the date of such transaction, the deposit into such account of cash or securities in such amount that the cash deposited plus the loan value of the securities deposited equals or exceeds the excess so created or the increase so caused.

▮ Birenbaum asserts that violation of this regulation is an affirmative defense to an action on the margin deficit after a commodity futures account is liquidated. We disagree. The margin regulations do not apply to transactions which occur in a

special commodity account, which is exclusively devoted to trading in commodities futures. Section 220.4 excepts certain "special accounts" from the margin requirements. Among the excepted accounts is the "special commodity account," defined in section 220.4(e) as an account in which "a creditor may effect and carry for any customer transactions in commodities." The express exception from regulation places the regulation of commodity trading under the exclusive jurisdiction of the Commodity Futures Trading Commission, created by the Commodity Futures Trading Commission Act of 1974, Pub.L.No.93–463, 88 Stat. 1389 (amending 7 U.S.C. § 1–17 (1964), and recognizes the congressional intent to exclude commodity trading from the margin rules promulgated under the Securities Exchange Act, Weiss, Registration and Regulation of Brokers and Dealers 78–79 (1965).

As amended, 7 U.S.C. § 2 (Supp.1977) provides:

> [The Commodity Futures Trading Commission] shall have *exclusive jurisdiction* with respect to *accounts,* agreements, . . . and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market designated pursuant to section 7 of this title or any other board of trade, exchange, or market . . . . [Emphasis added.]

Under this statute, the jurisdiction of the Commodities Futures Trading Commission over futures is exclusive, and the Securities and Exchange Commission and state securities agencies are precluded from regulating commodity futures accounts. *State v. Monex International Ltd.,* 527 S.W.2d 804, 806 (Tex.Civ.App.—Eastland 1975, writ ref'd); [1975] I Bromberg, Securities Fraud at 82.-142; Bromberg, *Commodities Law and Securities Law—Overlaps and Pre-emptions,* 1 J.Corp.L. 217, 303 (1976). The clear exception of commodity futures accounts from the S.E.C. margin regulations, coupled with the subsequent delegation of exclusive regulatory jurisdiction to the Commodity Futures Trading Commission, demonstrate that the margin rules of Regulation "T" do not apply to commodity futures accounts.

*Merrill Lynch, Pierce, Fenner & Smith v. Brooks,* 548 F.2d 615, 616–617 (5th Cir. 1977). Indeed, with limited exceptions for margin sales of gold and silver bullion and bulk coins, there are no governmental margin regulations for commodity futures accounts; rather, the commodity margin rules are normally set by the commodity exchanges and brokers. [1975] I Bromberg, Securities Fraud at 82.142; *cf. State v. Monex International Ltd., supra* (Commodity Futures Trading Commission held to have exclusive jurisdiction to regulate margin sales of gold and silver bullion and bulk coins by virtue of express statutory grant).

Since Birenbaum has failed to show that Bache's conduct violated any applicable margin regulations, we hold that the summary judgment was properly rendered.

Affirmed.