RUBY HOWARD, Plaintiff-Appellant, *v.* JEFFREY C. MILLER *et al.*, Defendants-Appellees.

First District (5th Division)   No. 81—330

Opinion filed July 16, 1982.

Ruby Howard, of Chicago, for appellant, *pro se.*

Tyrone C. Fahner, Attorney General, of Chicago (Henryk S. Borecki, Assistant Attorney General, of counsel), for appellees.

JUSTICE WILSON delivered the opinion of the court:

Plaintiff, Ruby Howard, brought this administrative review action *pro se* to challenge a decision by the Illinois Department of Public Aid (IDPA) to terminate benefits she had been receiving pursuant to the federally created Work Incentive Program (WIN). As a result of the agency's action, her total public assistance benefits from Aid to Families with Dependent Children (AFDC) was reduced by $136 per month. The circuit court affirmed the IDPA's decision and plaintiff brought this appeal. She makes several allegations against defendants, but the dispositive issue of this appeal involves the validity of her registration in the WIN program.

In 1971 Congress amended title IV of the Social Security Act to strengthen existing welfare programs which provided for job training and placement of recipients. (See Part A: Aid to Families with Dependent Children, 42 U.S.C. secs. 601 through 610 (1976); Part C: Work

Incentive Program for Recipients of Aid Under Part A, 42 U.S.C. secs. 630 through 644 (1976).) These amendments provided for mandatory registration of employable adult welfare recipients and focused on immediate job placement of recipients. (Act of Dec. 28, 1971, Pub. L. No. 92—223, 85 Stat. 802.) To implement the program, Congress authorized the U.S. Secretary of Labor to establish the WIN program in cooperation with the States, which would provide for training, placement and participation of recipients in public or private employment. (42 U.S.C. sec. 632 (1976).) As a part of the benefit eligibility requirement, employable adults are required to register with the WIN program (42 U.S.C. sec. 602(a)(19)(A) (1976)), and an unexcused failure to participate in the program results in the denial of AFDC benefits. (42 U.S.C. sec. 602(a)(19)(F) (1976).) Although the adult recipient who refuses to participate is denied AFDC benefits, the children of the household continue to receive assistance. 42 U.S.C. sec. 602(a)(19)(F)(i) (1976).

In Illinois, the WIN program is administered by two separate agencies, the Illinois Department of Public Aid and the Illinois Department of Labor. (See 45 C.F.R. secs. 224.0 through 244.77; Ill. Rev. Stat. 1979, ch. 23, pars. 4—1.8, 11—20.) The Department of Public Aid determines whether an AFDC recipient must register with WIN. Generally, a person is required to register if he or she is currently unemployed, over 16 years old, not physically or mentally handicapped, and not a mother of children who are under 6 years old. See Ill. Rev. Stat. 1979, ch. 23, pars. 11—20(1), (2), (5).

When IDPA determines that an AFDC recipient meets the registration criteria, the Department sends him or her a form notice apprising the person of the WIN status determination, the duty to register with the program, and the consequences of a failure to register.

The Department of Labor is responsible for actually administering the WIN program. After a public aid recipient registers by completing the form at a local office, the Department of Labor processes the registrant through the various steps in the WIN program, such as evaluation, training, and job placement. As an ongoing eligibility requirement, after registration, the recipient must continue to participate in the WIN program. (Rule PO—470(3), IDPA AFDC Manual (Oct. 1979).) Failure to participate in the program, without good cause, is grounds for the Department of Labor to "deregister" the recipient, resulting in a loss or reduction of benefits. In addition, if a WIN recipient obtains employment, he may become ineligible for all or part of his previous public assistance grant.

The facts of the present controversy may be summarized briefly. On September 10, 1979, the Illinois Department of Public Aid mailed a notice to plaintiff which directed her to register with a local WIN

office. Plaintiff telephoned her caseworker and stated that she was already registered with the WIN program and she did not understand why she had to register again. Subsequently, the caseworker checked the files of various WIN offices but was unable to find a copy of plaintiff's WIN registration form. The caseworker then sent a second notice to register to plaintiff but it was returned as undeliverable.

Plaintiff's local WIN office next mailed a notice to plaintiff that informed her that as a result of her failure to register, the financial assistance to her household would be reduced by $136 to $214 per month. This reduction represented her allotment of the total AFDC grant, the children's proportion to remain intact. At plaintiff's request, a hearing on the proposed agency action was held on February 6, 1980. At the hearing, plaintiff produced a copy of her WIN registration form dated February 6, 1976. She further attempted to describe a course of conduct by certain agency employees that had allegedly deprived her of her right to hearings on two other separate appeals that she had requested in 1978. The hearing officer told plaintiff that other appeals were not relevant to the one in issue. Defendants produced a copy of records which indicated that as of June 30, 1979, plaintiff was a potential WIN participant who was not registered with the program.

In the final administrative decision the acting director of IDPA adopted the hearing officer's findings and affirmed the local department's action in reducing plaintiff's assistance grant to $214, beginning December 1979. He stated that although the evidence showed that plaintiff had registered in 1976, "this information was over three years old and the local office was correct to require [her] to register with WIN again ***." He further held that plaintiff was wrongfully denied her food stamp benefits and directed that they be restored.

Plaintiff subsequently filed her complaint in the circuit court for administrative review. After a hearing the trial court affirmed the director's decision, entered judgment in favor of defendants, and dismissed plaintiff's complaint. She then brought this appeal.

OPINION

Initially, we reject plaintiff's assertion that requiring her to reregister in the WIN program was a violation of her civil rights. To simply fill out a second registration form seems to be a minor inconvenience at most. Nevertheless, under the circumstances of this case we do not believe plaintiff's benefits should have been curtailed. Our examination of the record results in our belief that plaintiff's refusal to reregister was not motivated by a recalcitrant attitude but apparently was influenced by her frustration over continuous problems she had

faced in prior dealings with Department personnel. Specifically, she alleges that she had never received a fair hearing on the merits of an earlier appeal involving a different matter and that certain employees of the county department had falsified some documents in her case file and otherwise engaged in a fraud or coverup. We will not set out the full details of these prior occurrences because we agree with the trial court that the jurisdictional time period for seeking judicial review of the prior appeals is past.[1] Those prior occurrences may be tangentially relevant to the present appeal but our primary concern is the narrow question before us: Was the agency's decision that plaintiff's 1976 WIN registration was invalid contrary to the manifest weight of the evidence? We hold that it was.

At issue in this case is not plaintiff's refusal to participate in the WIN program; she does not contend that she is exempt from the eligibility requirements for mandatory registration. Her position, simply stated, is that she registered in February 1976, has never been deregistered from the program and has participated in the program by attempting to obtain job training and employment. Therefore, the denial of her benefits was erroneous. Defendants respond that the agency's action was proper on the basis of IDPA records which indicated that she was not registered as of June 30, 1979. Those records, in conjunction with her failure to reregister upon notice from her local office, justified the agency's action.

The scope of our inquiry in reviewing factual issues is limited to determining whether the agency's findings are against the manifest weight of the evidence. (*King v. City of Chicago* (1978), 60 Ill. App. 3d 504, 377 N.E.2d 102.) In addition, an agency's construction of a statute or rule is considered persuasive, but not binding. (*Olin Corp. v. Pollution Control Board* (1977), 54 Ill. App. 3d 40, 370 N.E.2d 3.) At the hearing before IDPA the main issue was whether plaintiff had registered in the WIN program, which is a condition of eligibility. We believe that when she produced evidence of her 1976 registration the burden shifted to defendants to establish that she had been deregistered subsequent to that time. Defendants' only evidence was a computer printout that listed plaintiff as a potential WIN participant who was unregistered as of June 30, 1979. A representative from the Department admitted upon questioning by the hearing officer that she did not know if reregistration was required periodically and that she did not have actual verification of a cancellation of plaintiff's case.

---

[1]Plaintiff cannot be faulted for her persistence in raising the matters involved in her prior attempts to obtain relief from the agency. Indeed, despite her lack of legal expertise, plaintiff's handwritten pleadings and brief reflect her intelligence and sincerity.

Moreover, defendants' brief contains a copy of the form that is sent to recipients who are to be deregistered from the WIN program, which described the sanctions to be imposed (3 to 6 months' loss of benefits) for failure to participate in the WIN program without good cause. Since the Department proferred no copy of such a form sent to plaintiff or other indication of an actual deregistration decision in her case, we conclude that her 1976 registration remained in effect.

Defendants take the position, however, that the burden of maintaining a "current" registration is on the WIN participant and since plaintiff's initial registration was more than three years old at the time of the hearing, it was not current. Defendants cite a section of the Illinois Public Code which provides that eligible welfare recipients "shall maintain a current registration for employment ***." (Ill. Rev. Stat. 1979, ch. 23, par. 11—20(1).) Also, Rule PO—470(2) of the IDPA Manual (Dec. 1979), provides that if an individual is deregistered in error, "the eligibility requirement concerning WIN registration is no longer satisfied and the individual is to be immediately re-referred for WIN registration."

We believe that these general provisions simply reinforce the mandatory registration requirement as a precondition to obtaining public aid. Hence, a nonexempt individual, once notified of his or her WIN status, must comply with the statute and register with the program. Furthermore, if one is erroneously deregistered, the Department must re-refer him for registration. Presumably, in the "usual" case, the recipient would then reregister and the error would thus be corrected.

The pending case, however, involves unusual circumstances. At the time plaintiff received notice to register in 1979, she had, with limited success, been seeking resolution of other matters connected to the WIN program. She knew she had already registered, as she told her caseworker upon receipt of the notice, and had never been deregistered from the program. Nor had her public aid benefits ever been reduced, which indicates that she had not been deregistered at any previous time. At the hearing she produced verification of her 1976 registration. For defendants to now assert, on appeal, that she should have known that she must reregister to remain "current" ignores the clear indication from the transcript that no one from the Department knew what the policy was on "current" registration. Moreover, they could not produce any evidence of plaintiff's actual deregistration or cancellation. The computer printout list, therefore, had limited evidentiary value.

Defendants' argument on appeal is further weakened by the inclusion in their brief of a certain decision by the Department of Labor's Board of Review, which they use as "proof" that plaintiff was deregistered several times for refusal to participate in the program. The

registrant in that appeal is named Rubella Howard, which apparently explains their belief that the Board's decision involved plaintiff. The decision is not a part of the record, but defendants include it in their brief "for information purposes" to show "plaintiff's latest refusal to participate in the WIN program." What defendants inexplicably failed to realize, however, is that the decision involved someone other than plaintiff and is totally irrelevant. Our check of the record reveals that the Rubella Howard in that case lives in a different city than does plaintiff and has a different social security number. Such an oversight by the brief's authors, the Attorney General's Office, can only reinforce plaintiff's belief that her case has been mishandled, deliberately or otherwise, from the beginning.

██ █ In that regard we note that the pleadings, transcript, and other papers in the record are inconclusive as to plaintiff's allegations of fraud and forgery. The trial court dismissed the portion of the complaint involving these allegations because they arose out of plaintiff's earlier appeals (Nos. 78—6584 and 79—3015) which were disposed of by final administrative orders on the basis of a lack of jurisdiction. Plaintiff failed to appeal those orders in the circuit court within the jurisdictional 35 days, which bars judicial review. (Ill. Rev. Stat. 1979, ch. 110, par. 267; *Chin v. Department of Public Aid* (1979), 78 Ill. App. 3d 1137, 398 N.E.2d 135.) The final administrative decision in case No. 78—6584 was issued on December 4, 1978, and the final decision in No. 79—3015 was issued on June 28, 1979. Plaintiff's complaint for administrative review of the present matter was filed on April 3, 1980, well past the 35-day time limit for those appeals. Although the prior appeals are not judicially reviewable, we note that the office of the Director of IDPA, responding to plaintiff's written request, did informally review the history of her case and concluded that her appeals had been heard and disposed of properly.[2] Therefore, we cannot conclude that plaintiff has been denied due process with respect to any of her claims.

██ As a final issue, plaintiff's complaint requests money damages, presumably on her claim of fraud. Since we have found that the trial court properly dismissed that count for lack of jurisdiction it follows that her damages request also fails. The relief that plaintiff is entitled to is the restoration of the public aid payments that she was denied as

---

[2]The Director's letter, dated October 15, 1979, further thanks plaintiff for calling attention to certain improper actions taken by the Department's appeal coordinator and assured her that disciplinary measures had been taken. Although this reference to impropriety on the part of Department personnel does not prove plaintiff's allegations of fraud and forgery, it does indicate that plaintiff's previous disputes with the Department might have contributed to her failure to reregister in the WIN program.

a sanction for failing to register.

In summary, we reverse that portion of the trial court's judgment that affirmed the agency's decision to reduce plaintiff's benefits by $136 per month. We affirm the court's dismissal of the remainder of plaintiff's complaint and remand the cause for the calculation of plaintiff's lost benefits.

Affirmed in part; reversed in part; and remanded for further proceedings.

LORENZ and MEJDA, JJ., concur.