**Lawrence B. ALKOFF, Plaintiff,**

v.

**Anthony R. GOLD, Defendant.**

**No. 84 CIV. 4235 (PKL).**

United States District Court,
S.D. New York.

March 22, 1985.

Arnheim, Lehman & Gikow, New York City (David H. Gikow, New York City, of counsel), for plaintiff.

Lieberman Rudolph & Nowak, New York City (Mitchell A. Stein, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

LEISURE, District Judge:

Plaintiff Lawrence Alkoff has asserted claims for damages and other relief pursuant to Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), Rule 10b–5 promulgated thereunder, and 18 U.S.C. §§ 1961–68, known as the Racketeer Influenced and Corrupt Organizations Act ("RICO"). In addition, plaintiff has asserted pendent claims for fraud, duress, mistake, and New York Business Corporation Law violations and seeks rescission, constructive trust and an accounting under New York common law. Defendant Anthony Gold has moved to dismiss, abate or stay the action pending resolution of an action proceeding in New York State Supreme Court and for dismissal of the RICO claim pursuant to recent decisions of the Second Circuit Court of Appeals. For the reasons presented below, the motion to dismiss, abate or stay is denied, and the motion to dismiss the RICO claim is granted.

## FACTUAL BACKGROUND

Briefly stated the facts are as follows: Alkoff and Gold were the sole shareholders, officers and directors of Intersoft Corporation ("Intersoft"). Under his employment agreement with Intersoft, Gold was responsible for the day to day management of Intersoft and was obligated to devote his full efforts to Intersoft and not to compete with the business of Intersoft. In 1982, during the course of negotiations with certain venture capitalists to obtain additional financing for Intersoft, Alkoff claims he first learned of Gold's involvement with *PC Magazine*, a magazine devoted to IBM Personal Computer interests. In connection with the private placement of Intersoft shares, the parties executed certain releases regarding the ownership of PC Magazine. In addition, pursuant to a new shareholders' agreement, Gold was to sell his Intersoft shares to the other shareholders, including Alkoff, for $35 per share.

Alkoff claims he signed the release in favor of Gold based upon Gold's representations that *PC Magazine* was economically insignificant and that Gold was merely a passive investor. In exchange for the release, Alkoff alleges he received two shares of Gold's Intersoft stock. In November 1982 Gold sold *PC Magazine* for a substantial sum of money.

In April 1983 Alkoff and the other shareholders brought suit in New York State Supreme Court seeking specific performance of the shareholders' agreement. Alkoff alleges that during discovery in that action he learned Gold made certain misrepresentations about conflicting interests and breach of fiduciary duties. Accordingly, Alkoff's attorneys wrote a letter dated March 13, 1984 to the Intersoft Board of Directors informing them of the claims and requesting that the Board take action. On May 29, 1984 Gold brought suit for a declaratory judgment on the releases and for libel arising out of the March 13, 1984 letter. *Gold v. Intersoft Corp.*, 489 N.Y. S.2d 660 (Sup.Ct.N.Y.Co.) (hereinafter *Gold v. Intersoft* or the "State Action"). Defendants' answer therein asserted as a defense to Gold's claim for a declaratory judgment that the Alkoff release was obtained in violation of Section 10(b) of the 1934 Act and Rule 10b–5 and that Gold is estopped from relying on the release. By letter dated December 17, 1984, counsel to the Executive Committee of the Intersoft Board of Directors notified Alkoff's counsel that the Committee had determined that it would not assert any claims against Gold. In a decision published January 29, 1985 in *The New York Law Journal*, the

Honorable Edward J. Greenfield denied the motion of the *Gold v. Intersoft* defendants to dismiss the libel claims on the grounds of a qualified privilege.

## THE ABSTENTION MOTION

■ Gold seeks to dismiss the instant action pending resolution of *Gold v. Intersoft* on the basis that all of the factual issues arising from the parties' relationships are presented in the state court action. If it is determined that the releases are valid, Gold claims he will be free of any liability that may possibly arise in either action. Gold contends that pursuant to *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978) and *Weiner v. Shearson, Hammill & Co.*, 521 F.2d 817 (9th Cir.1975), the state court is empowered to review Alkoff's federal securities law claims because such claims were affirmatively pleaded as a defense in the State Action. It is important to note at the outset of this discussion that none of Alkoff's affirmative claims for damages are asserted by way of defense or counterclaim in the State Action.

Defendant's motion to have this Court dismiss, abate or stay the instant proceeding amounts to a request to have the Court use its discretion to abstain or decline from exercising its jurisdiction.

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest."

*Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (hereinafter *"Colorado River"*) quoting *County of Allegheny v. Frank Mashuda*

*Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959). There are four general categories of abstention. 424 U.S. at 814–17, 96 S.Ct. at 1244–46. The first category is not applicable here because no federal constitutional issue would be avoided by deferring to the state court. The second category does not apply because federal jurisdiction has not been invoked for the purpose of restraining state criminal proceedings. The third category does not apply because no difficult questions of state law are presented by the instant action.

A fourth category, enunciated in *Colorado River*, rests "on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 817, 96 S.Ct. at 1246, quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). This exception may apply when the state and federal courts have concurrent jurisdiction. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246. This category is inapplicable to the instant case because there is no concurrent state and federal jurisdiction over the federal securities law claims herein. *Silberkleit v. Kantrowitz*, 713 F.2d 433, 435–36 (9th Cir.1983). The federal courts have exclusive jurisdiction over federal securities law claims under the 1934 Act. 15 U.S.C. § 78aa. *Silberkleit*, 713 F.2d at 436. *See Calvert*, 437 U.S. at 666, 98 S.Ct. at 2559.

Defendant's reliance upon *Calvert* is misplaced. The issue decided therein by the Supreme Court was the standard to be applied for the issuance of a writ of mandamus under 28 U.S.C. § 1651. 437 U.S. at 661, 98 S.Ct. at 2556. The stay entered by the district court in *Calvert* did not apply to plaintiff's claims for damages under Rule 10b–5. *Id.* at 659, 98 S.Ct. at 2555. Moreover, in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Court specifically stated that the decision in *Calvert* did not undermine the

application of the *Colorado River* "exceptional-circumstances" test. 460 U.S. at 16–19, 103 S.Ct. at 937–939.

■ The Supreme Court in *Calvert* and the Second Circuit have squarely endorsed the proposition that "[w]here exclusive jurisdiction exists, only the federal courts can provide affirmative relief." *Levy v. Lewis*, 635 F.2d 960, 967 (2d Cir.1980). *Accord Movielab, Inc. v. Berkey Photo, Inc.*, 321 F.Supp. 806, 810 (S.D.N.Y.1970), *aff'd*, 452 F.2d 662 (2d Cir.1971). For this reason the Court declines to follow the example set forth by the Ninth Circuit in *Weiner v. Shearson, Hammill & Co.*, 521 F.2d 817, 822 (9th Cir.1975), wherein the Court suggested that a state court may have jurisdiction over 1934 Act issues raised as a matter of affirmative defense. *Cf. Herrington v. County of Sonoma*, 706 F.2d 938, 940 (9th Cir.1983).

Defendant has also urged the Court to stay the instant action under the "parallel state proceeding theory" as described by the Honorable Robert J. Ward in *Alameda Room, Inc. v. Pitta*, 538 F.Supp. 1072 (S.D. N.Y.1982); *Bryant v. Commissioner of Social Services*, 530 F.Supp. 1175 (S.D.N. Y.1982). This theory of abstention, however, does not apply to the instant action for the same reason abstention would be inappropriate under *Colorado River*. Only federal courts can provide affirmative relief under the federal securities laws. In *Alameda* and *Bryant* the state and federal courts had concurrent jurisdiction to decide the matters presented.

Accordingly, defendant's motion to dismiss, abate or stay the action with respect to the federal securities law and pendent state claims is denied.

### MOTION TO DISMISS THE RICO CLAIM

■ Gold has made a motion to dismiss the RICO claim on grounds that the complaint alleges no distinct RICO injury, as required by the Second Circuit in *Bankers Trust Co. v. Rhoades*, 741 F.2d 511 (2d Cir.1984), and that it fails to allege the existence of criminal convictions for the predicate acts, as required under *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 (2d Cir.1984), *cert. granted*, —— U.S. ——, 105 S.Ct. 901, 83 L.Ed.2d 917 (1985). Plaintiff concurs to the extent that a stay of the RICO claim is appropriate. The Court has concluded, however, that *Bankers Trust* and *Sedima* mandate dismissal of the RICO cause of action. Accordingly, the RICO claim is dismissed without prejudice. Plaintiff, however, has leave to reinstate the action *nunc pro tunc* in the event that the United States Supreme Court subsequently determines that a civil RICO claim requires neither a distinct RICO injury nor a criminal conviction.

SO ORDERED.