WESTERN CAPITAL AND SECURI-
TIES, INC., Plaintiff and Appellant,

v.

Helen KNUDSVIG, Defendant
and Respondent.

No. 880198–CA.

Court of Appeals of Utah.

Feb. 7, 1989.

Craig F. McCullough, Salt Lake City, for plaintiff and appellant.

Gerald S. Wight, Ogden, for defendant and respondent.

OPINION

Before BILLINGS, GARFF and JACKSON, JJ.

GARFF, Judge:

Plaintiff and appellant, Western Capital and Securities, Inc. (Western), filed an action to recover $5,402.20 damages incurred when defendant and respondent, Helen Knudsvig, failed or refused to deliver a stock certificate after she allegedly requested Western to sell stock for her. Knudsvig counterclaimed, alleging that Western had violated Rules 10b–5 and 10b–10 promulgated under § 10(b) of the Securities and Exchange Act of 1934, and various rules of the National Association of Securities Dealers (NASD). We affirm in part and reverse in part.

Western is a broker-dealer registered with the United States Securities and Exchange Commission and the Utah Securities Division. Knudsvig is a sixty-one-year-old customer who occasionally purchased penny stocks through Western and other brokerage firms. The trial court found that she was not a sophisticated investor and only traded a few hundred dollars worth of stock per year.

The conditions in the brokers' contract between Western and Knudsvig required settlement of all transactions five days after a sale or purchase. The relevant provisions read:

4. All transactions shall be settled by the fifth full business day following the sale or purchase ... and at your option, if you shall not have received cash for the securities purchased for my account or delivery of the securities sold for my account, appropriately endorsed and in proper negotiable form, on the fifth full business day following the purchase or sale, as the case may be, you shall have the right, either with or without demand upon or notice to me, such demand or notice being expressly waived, to close my account, or any trade or transaction included herein on any such exchange or market, at public or private sale, or by public or private purchase, with or without advertising such sale or purchase, such advertising being hereby expressly waived, and such sale or purchase may be made in one or a series of sales or purchases as you may elect.

5. You are authorized to accept from me oral or telephonic orders for the purchase or sale of securities and in consideration of your acceptance of this agreement, I hereby waive any defense that I may have because any such order was not in writing or evidenced by a memorandum in writing as required by the Statute of Frauds, or other statute.

9. Communications of every kind referring in any way to my account may be sent to me at my address given hereon ... and all communications so sent, whether by mail, telegraph, messenger or otherwise, shall be deemed given to me personally whether actually received by me or not.

Kim Johnson, secretary/treasurer of Western, testified that this language meant that, on the fifth business day following the sale or purchase, Western had the option (1) to close the transaction by buying in, or (2) to allow the contract to remain open.

In about June 1983, Knudsvig purchased 20,000 shares of Venture Consolidated, Inc. (Venture) for $200 through Western. This offering was a new issue of penny stock for which Western was a market maker. Knudsvig claimed that she never received a stock certificate, but had attempted to obtain a duplicate certificate in August or September of 1983 and also in November of 1984.

In July 1984, Venture shareholders approved an acquisition and merger with several Big O Tire franchises. They changed the name of the corporation to Tires, Inc. and approved a 20 to 1 reverse stock split. On September 14, 1984, Louis Babcock, Western's Ogden representative, who was acquainted with Knudsvig through past dealings, notified Knudsvig that her Venture shares had increased in value from $.01 to $.17 per share, and asked her if she wanted to sell. Knudsvig declined. Later, excited about the rise in value of her stock, she unsuccessfully attempted to contact Babcock. She then contacted Western's office in Salt Lake City and spoke to Richard Davis. After a lengthy discussion, Davis concluded that Knudsvig wanted to sell her stock and wished to credit the sales commission to Babcock. While Knudsvig was still on the telephone, Davis contacted Richard C. Parker, Western's executive vice president, for instructions on how to consummate the transaction, which was complicated by Knudsvig's confusion, the lack of a stock certificate, and having to credit the commission to Babcock. Parker, in spite of these difficulties, immediately approved the purchase from Knudsvig for $.16114 per share through Western's market making account. Davis returned to the phone, informed Knudsvig of the sale and selling price, and told her that she had to mail in the stock certificate. He informed her that it was possible for a trade to take place without possession of the certificate since she had ten [sic] days after the trade to bring in the certificate. Parker stated that the sale was handled in this manner because Knudsvig was an established, sophisticated customer who had paid for and delivered stock in a timely manner over a long period of time.

Knudsvig disputes Davis's statements, although her testimony is somewhat unclear. Initially, she denied that this phone call ever took place, but then admitted to

making the call. She denied that she ever requested the sale of her stock. She further testified that she had no intention of making a sale, thought that Western could not sell her stock without possession of the certificate, and in 1983, Western had cancelled a similar sale because she could not find her stock certificate. The trial court found that she had assumed there could be no final sale until she was able to get a stock certificate.

Knudsvig stated that, at this point, she was unaware that her stock had been sold because she never received a written confirmation of the sale. Western, however, stated that, within the five day period following the sale, it had sent a written confirmation to Knudsvig's address. Western did not close Knudsvig's account for seventy-five days after the purported sale, at which time the value of the stock had risen to $8.00 per share.[1] Johnson testified that Western had waited for this unusually long period of time to cover Knudsvig's short position because she was a good customer, she had indicated that she was replacing the certificate, and Johnson thought that he was acting in Knudsvig's best interest. Western's eventual buy-in resulted in a $5,402.20 deficit in Knudsvig's account, which is the basis for Western's complaint.

In its memorandum decision, entered on October 23, 1986, the trial court found that Knudsvig continued to be the owner of the stock, that the alleged sale never occurred, and that Western's activity was unconscionable. The trial court dismissed Western's complaint and awarded punitive damages to Knudsvig in the amount of $10,000.

Appellant asserts that the trial court erred: (1) in finding that Knudsvig did not authorize the sale of her stock; (2) in finding that Western violated Rules 10b–5 and 10b–10 of the Securities Exchange Act of 1934; (3) in finding that Western violated various National Association of Securities Dealers (NASD) rules, and in finding that there is a private right of action for viola-

tion of NASD rules; and (4) in awarding punitive damages.

■ The trial court's findings of fact will not be disturbed on appeal unless they "are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987); *see also Cove View Excavating & Const. Co. v. Flynn*, 758 P.2d 474, 477 (Utah Ct.App.1988). Factual findings are given considerable deference because of the trial court's ability to assess the witnesses's credibility. Utah R.Civ.P. 52(a); *Power Systems & Controls, Inc. v. Keith's Elect. Constr. Co. Systems Inc.*, 765 P.2d 5, 9 (Utah App.1988); *Southland Corp. v. Potter*, 760 P.2d 320, 321 (Utah Ct.App.1988). Findings of fact are clearly erroneous if the appellant can show that they are without adequate evidentiary foundation or if they are induced by an erroneous view of the law. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).

■ In carefully examining the record, we note that there is much conflicting evidence and inconsistent testimony, especially regarding Knudsvig's telephone call to Western, in which Knudsvig purportedly authorized the sale of her stock, and regarding whether or not Knudsvig received written confirmation of the alleged sale from Western. The trial court found that Knudsvig had no intention of selling her stock, that she was the rightful owner of the 20,000 shares of Venture stock, and that Western failed to establish, by a preponderance of the evidence, that written notice of the transaction was mailed to Knudsvig.

In essence, Western argues that the trial court should have believed its evidence rather than Knudsvig's. However, the clear weight of the evidence supports the trial court's findings that the sale was not authorized and did not take place, and we defer to the trial court's advantaged position in evaluating the witnesses's demeanor and credibility. We find no error in the

---

**1.** At the time of the trial, October 16, 1986, the value of the stock was approximately $30.00 per

court's rulings on this issue.[2]

### JURISDICTION

■ Western asserts that the trial court erred in finding that it violated Rules 10b–5 and 10b–10 of the Securities Exchange Act of 1934 and various NASD rules. Before we examine the merits of this argument, however, we raise sua sponte the issue of subject matter jurisdiction over this claim. As stated in *Carreathers v. Carreathers*, 654 P.2d 871 (Colo.Ct.App.1982),

> [t]he parties have not raised the issue of ... subject matter jurisdiction ... in the trial court or in this appeal. However, the question of subject matter jurisdiction may be raised at any stage of an action without an assignment of error, and an appellate court may decide a question of subject matter jurisdiction where it appears on the face of the record.

*Id.* at 871; *see also Thompson v. Jackson*, 743 P.2d 1230, 1232 (Utah Ct.App.1987). Furthermore, "this Court may, on its own motion, determine lack of jurisdiction." *Bailey v. Sound Lab, Inc.*, 694 P.2d 1043, 1044 (Utah 1984); *see also State v. Brandimart*, 720 P.2d 1009, 1010 (Haw.1986). "Jurisdiction cannot be conferred upon this Court by stipulation" of the parties. *Bailey*, 694 P.2d at 1044.

Exclusive jurisdiction over causes of action stemming from violations of the Securities Exchange Act of 1934 is vested in the federal courts. The 1934 Act, at 15 U.S.C. § 78aa (1981), states in relevant part:

> The district courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder.... Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder ... may be brought in any such district or in the district wherein the defendant is found or is an inhabitant....

Federal courts generally interpret this statute to mean what it says: federal jurisdiction is exclusive over actions brought to enforce the 1934 Act. *See, e.g., Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1313 (9th Cir.1985); *DeHaas v. Empire Petroleum Co.*, 435 F.2d 1223, 1231 (10th Cir.1971); *Alkoff v. Gold*, 611 F.Supp. 63, 66 (S.D.N.Y.1985); *Kinsey v. Nestor Exploration Ltd.—1981A*, 604 F.Supp. 1365, 1368–69 (E.D.Wash.1985); *Fradkin v. Ernst*, 571 F.Supp. 829, 839 (N.D.Ohio 1983); *Kleckley v. Hebert*, 464 So.2d 39, 42 (La.Ct.App.1985).

There is a split in authority as to whether the 1934 Act can be used as an affirmative defense in state actions. Some jurisdictions assert that state courts do not have jurisdiction to adjudicate federal securities law questions brought under the 1934 Act, even when raised as an affirmative defense. Instead, they "squarely endorse" the proposition that "[w]here exclusive jurisdiction exists, only the federal courts can provide affirmative relief." *Alkoff*, 611 F.Supp. at 66 (quoting *Levy v. Lewis*, 635 F.2d 960, 967 (2nd Cir.1980)).

While recognizing that the statute precludes state court adjudication of direct claims based upon the violation of the 1934 Act, other jurisdictions allow state courts to consider claims based on .the 1934 Act which are raised as affirmative defenses in state court actions. *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 63 (2nd Cir.1986); *Scope Indus. v. Skadden, Arps, Slate, Meagher & Flom*, 576 F.Supp. 373, 379 (C.D.Cal.1983); *Birenbaum v. Bache & Co.*, 555 S.W.2d 513, 514–15 (Tex.Civ.App.1977).

Even so, these jurisdictions do not allow state courts to grant affirmative relief to a defendant who prevails on such federal claims, but, instead, force the defendant to go to federal court to seek affirmative relief. *Andrea Theatres*, 787 F.2d at 63.

---

share.

**2.** Although Knudsvig raises affirmative defenses to Western's action under Utah Code Ann. § 70A–8–301, the Securities Exchange Act of 1934 § 10b–10, and § 12 of the NASD manual, we do not consider them because: (1) we sustain the trial court's finding that no sale of the securities occurred, thus obviating the need for a defense to the sale, and (2) the parties did not raise the issue on appeal.

Further, these jurisdictions distinguish between "cases," wherein state determination is precluded, and "questions," which the state may adjudicate, which arise under the 1934 Act. *Scope Indus.*, 576 F.Supp. at 378–79; *Birenbaum*, 555 S.W.2d at 515. The *Birenbaum* court adopted the United States Supreme Court's reasoning regarding jurisdiction over patent claims in making this distinction:

> There is a clear distinction between a *case* and a *question* arising under the patent laws. The former arises when the plaintiff in his opening pleading—be it a bill, complaint, or declaration—sets up a right under the patent laws as ground for a recovery. Of such the state courts have no jurisdiction. The latter may appear in the plea or *answer* or in the testimony. The determination of such question is not beyond the competency of the state tribunals.

*Birenbaum*, 555 S.W.2d at 515 (quoting *Pratt v. Paris Gaslight & Coke Co.*, 168 U.S. 255, 259, 18 S.Ct. 62, 64, 42 L.Ed. 458 (1897) (emphasis in *Birenbaum* ). The *Birenbaum* court found that the state court was competent to adjudicate a 10b–5 violation issue because it "only appeared by way of defense, it is merely a question in the case, rather than a claim for relief." *Birenbaum*, 555 S.W.2d at 515.

Similarly, the *Scope Industries* court, in determining that the state court had jurisdiction to consider a defense based on the 1934 Act, also distinguished between *cases*, which the state court could not adjudicate, and *questions*, which the state court was competent to consider. It stated that whether a "colorable claim existed under the Exchange Act at the commencement of the underlying action is different in kind than the question of whether or not Scope violated the Exchange Act, as alleged in the underlying action." *Scope Indus.*, 576 F.Supp. at 378–79.

We do not find it necessary today to decide which of these lines of cases we will follow. Although Knudsvig asserted Rule 10b–10 as an affirmative defense, her claims under the 1934 Act were brought in the form of a counterclaim for violation of Rule 10b–5 as well as Rule 10b–10. Thus, even under the more liberal authority, she does not qualify jurisdictionally. These claims are in the nature of a case rather than a question and, accordingly, we do not have jurisdiction to consider them.

## VIOLATION OF NASD RULES

Section 15A(b)(6) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o–3(b)(6) (1981), requires securities associations, such as the NASD, to adopt disciplinary rules. *See Emmons v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 532 F.Supp. 480, 483 (S.D.Ohio 1982). Section 15 U.S.C. § 78s(g) requires that "[e]very self-regulatory organization shall comply with the provisions of this chapter, the rules and regulations thereunder, and its own rules." Thus, the NASD comes under the regulatory provisions of the Act and is subject to the exclusive jurisdiction provision of 15 U.S.C. § 78o(a). Therefore, any action based on violation of NASD rules must be brought in the federal courts.

That Knudsvig's counterclaim may be construed to be compulsory under Utah R.Civ.P. 13(a) still does not confer jurisdiction upon this Court to hear the merits of her claim. "A party is not required to file a compulsory counterclaim in the district court if the claim exceeds the jurisdiction of that court." *Brewer v. Bradley*, 431 So.2d 544, 545 (Ala.Civ.App.1983).[3]

To summarize, Knudsvig's counterclaim relies exclusively upon alleged violations of the 1934 Act and NASD rules, which are regulated under the 1934 Act, all of which come under exclusive federal jurisdiction. Once we have determined that we have no jurisdiction over a claim, all we may do is

---

**3.** Federal practice is similar: If a federal court has jurisdiction over a plaintiff's claim, it will also have jurisdiction over a counterclaim arising from the same action or occurrence. However, "if the counterclaim is entirely beyond the competence of the federal courts, as for example, an action precluded by sovereign immunity or one involving a purely probate matter, the court may not adjudicate it even if the claim would otherwise be treated as compulsory." Wright & Miller, *Federal Practice & Procedure*, § 1414 at 72 (1971).

dismiss the action. *See In re Marriage of Passiales*, 144 Ill.App.3d 629, 494 N.E.2d 541, 547, 98 Ill.Dec. 419 (1986); *Wells v. Noldon*, 679 S.W.2d 889, 891 (Mo.Ct.App. 1984). Therefore, we dismiss Knudsvig's entire counterclaim.

## PUNITIVE DAMAGES

The trial court dismissed Western's complaint and, even though the court failed to find any actual damages stemming from the alleged violations of the Securities Exchange Act of 1934 in Knudsvig's counterclaim, it awarded punitive damages to Knudsvig. Since we have found that the trial court had no jurisdiction to hear the counterclaim, it follows that Knudsvig's associated request for damages fails. *See Howard v. Miller*, 108 Ill.App.3d 1, 438 N.E.2d 680, 685, 63 Ill.Dec. 749 (1982); *see also DeWitt County Pub. Bldg. Comm'n v. County of DeWitt*, 128 Ill.App.3d 11, 469 N.E.2d 689, 694, 83 Ill.Dec. 82, 87 (1984). Further, "a court without jurisdiction cannot order affirmative relief." *Chadwick v. Pillard*, 536 F.Supp. 73, 75 (E.D.Tenn. 1982). Therefore, the trial court could not award punitive damages.

We affirm the trial court's dismissal of Western's complaint but reverse its award of punitive damages.

BILLINGS and JACKSON, JJ., concur.